O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUSSELL LEE GOOCH, | ) | Case No. CV 11-9904-SP |
| Petitioner, | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| LOS ANGELES COUNTY PROBATION DEPARTMENT, | ) | |
| Respondent. | ) | |

**I.**

**INTRODUCTION**

On November 30, 2011, petitioner Russell Lee Gooch filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition").  Petitioner challenges his 2008 convictions for stalking, dissuading a witness, and violating a protective order in the Santa Barbara County Superior Court.

The Petition raises seven grounds for relief: (1) the prosecutor committed misconduct by implying that the alleged victim had neither used profanities nor threatened petitioner, and by improperly injecting himself into the case; (2) venue did not lie in the jurisdiction where petitioner was prosecuted; (3) petitioner's right

1

to cross-examine witnesses was violated by the trial court's admission of documents used in petitioner's nursing license revocation proceeding; (4) petitioner's right to a fair trial was violated because of juror misconduct, perjury during voir dire, and sleeping jurors; (5) the trial court violated petitioner's right to confront witnesses by not allowing him to recall an adverse witness; (6) the jury instruction for count six was erroneous; and (7) petitioner's due process rights were violated when the trial court admitted irrelevant expert testimony.

On March 22, 2012, respondent filed a Motion to Dismiss the Petition on timeliness and exhaustion grounds. Petitioner filed an Opposition to the Motion to Dismiss and an Addendum to the Opposition on April 10, 2012 and May 1, 2012. On June 14, 2012, the court denied the Motion to Dismiss.

On July 13, 2012, respondent filed an Answer to the Petition. Petitioner filed a Reply on July 30, 2012. Both petitioner and respondent consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons discussed below, petitioner's claims do not merit federal habeas relief. Accordingly, the Petition will be denied with prejudice.

## II.

## STATEMENT OF FACTS[1]

Petitioner and the victim, Stacy Ann Bruneau, married in October 2003. They both worked as registered nurses. In January 2004, when they were living in Belle Chasse, Louisiana, petitioner assaulted Bruneau. Petitioner was arrested,

---

[1] The facts set forth are drawn substantially verbatim from the California Court of Appeal's decision on direct appeal. *See* Lodgment F at 2-5. Such statement of facts is presumed correct. 28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009). All references to lodged documents by their Lodgment letters are to documents lodged in support of the Motion to Dismiss on May 11, 2012.

and the couple separated.

In August 2004 Bruneau moved to California and began working in San Rafael. The following month, petitioner moved into Bruneau's apartment. In November 2004 petitioner threw a phone book and a beer can at Bruneau. Petitioner was arrested and pleaded guilty to battery on March 3, 2005. A protective order was issued requiring petitioner not to contact Bruneau and not to come within 150 yards of her.

On March 23, 2005, Bruneau returned to her apartment after work and found petitioner hiding in the closet. Petitioner threatened Bruneau and left. Later that same day, petitioner forcibly entered Bruneau's apartment and confronted her. Bruneau ran to the bathroom, shut the door, and telephoned the police. As a result of this incident, in August 2005 petitioner was convicted of two misdemeanors: violating a protective order (Penal Code § 166(c)(1)) and stalking (Penal Code § 646.9(a)).

In July 2005 Bruneau filed for divorce, and the divorce became final in the spring of 2006. In September 2006 a protective "peaceful contact" order was issued. It allowed petitioner to contact Bruneau, but directed him not to annoy, harass, or threaten her or "attempt to or actually prevent or dissuade" her from "making a report to any law enforcement agency or person."

*Count 2: Attempting to Dissuade a Witness from Reporting a Crime*

Bruneau moved to Santa Barbara. On November 5, 2006, petitioner telephoned Bruneau and was "verbally abusive." Bruneau was at her apartment in Santa Barbara and petitioner was in San Francisco, where he resided. Bruneau hung up the telephone, but petitioner continued to call her. Petitioner then sent harassing emails to Bruneau. Bruneau felt "[a]fraid" and "[t]hreatened." Bruneau emailed petitioner that she was going to report him to the district attorney. In reply to her email, petitioner left threatening voice mails on her cellular telephone.

Bruneau was "terrorized." She "[p]acked [her] things and left [her] apartment" in Santa Barbara because she feared that petitioner was coming there to "carry out his threats." Bruneau made a recording of the voice mails. She sent the recording and petitioner's emails to law enforcement officials.

The voice mails left by petitioner on November 5, 2006, included the following excerpts:[2] "So you tell fuckin' S-, the D.A. to bring swat and a body bag because that's what they're gonna need to take me out, because you gotta kill me to cuff me." "I'm gonna come see you . . . . Palm Springs is where you're workin' right? . . . Before you get on your plane tomorrow morning, I'll meet you in Palm Springs. Bring me a black SUV for my niggas. We're gonna come see you. So, uh, could you call the D.A., uh, you go right ahead and do that . . . . So, um, you go ahead and make that call to the D.A. okay, because you'll never put me in jail again." " . . . I'm comin' at you civilly. I'm gonna sue your fuckin' ass. I'm gonna sue your kids . . . . All the money they're gonna make for the rest of their fuckin' life and the rest of your life . . . . You try to get me put in jail. Okay, I got no problem with that. I called my niggas. You wanna make a threat? I ain't makin' a threat. I'm makin' a promise." "I'm on my way to, uh, Santa Barbara . . . . If I miss you . . . I'll see you in, uh, Palm Springs. So, uh, next time you wanna threaten me on-line, make sure, uh, you can back it up."

*Count 3: Attempting to Dissuade a Witness from Reporting a Crime*

On November 17, 2006, while at a conference in Dallas, Texas, Bruneau received harassing and threatening voice mails and text messages from petitioner.

---

[2] All voice mail excerpts quoted herein are taken verbatim from People's Exhibit No. 10, a transcript of the voice mails. People's Exhibit No. 10 was not admitted in evidence. A compact disc (CD) of the voice mails was played for the jury and admitted in evidence as People's Exhibit No. 10-A. Before the CD was played, each juror received a copy of People's Exhibit No. 10. The trial court instructed the jurors to use the transcript as "a road map or a guide to help you listen."

One text message said:  "Am pursuing any and all civil and criminal claims against you."  Another text message said:  "Are you really that stupid?  The benefit of the doubt ran out."

The voice mails left by petitioner on November 17, 2006, included the following excerpts:  "[J]ust brought civil litigation against you.  This is nothing but, um, retaliation, um, me suing you . . . ."  "Maybe I'll be in New Orleans on Monday . . . .  I'm just gonna call my niggas and see, you know, if they can drive me down there so I'll be down there.  You know, they got lots of money 'cause they're fuckin', you know they're . . . my niggas . . . .  That's where you'll be on Thursday[.]  That's why I'm in Louisiana. . . .  We'll come see you, we'll come see you Thursday.  How's that?"  "Cool, I'll be there . . . with my niggas and seeing if you're there or not . . . I appreciate you callin' . . . the D.A. and probation because they can't do shit 'cause all I did was, uh, threaten to sue you, which I'm threatening you right now to sue your fuckin' ass even more than I was before.  So, um, and I'm gonna get you fuckin' arrested and put in jail for perjury . . . ."

*Count 6: Violating a Protective Order by an Act Involving a Threat of Violence*

On January 1, 2007, while in New Orleans, Bruneau received a text message from petitioner saying, "Im going to lite u up."  During the incident at Bruneau's apartment on March 23, 2005, petitioner had declared to her:  "I'm going to be the next Scott Peterson.  But I'm not going to drown you, I'm going to burn you . . . ."[3]  In view of this earlier threat, Bruneau considered petitioner's text message to be a threat to kill her by burning:  "It was like a death sentence."  She was "desperate . . . to get someone to help [her] before [she] ended up dead."

Petitioner, on the other hand, claimed that his text message had been altered.

---

[3]   Pursuant to Evidence Code §§ 452(g) and 459, the trial court took judicial notice that on March 16, 2005, exactly one week before the March 23rd incident at Bruneau's apartment, Scott Peterson was sentenced to death for murdering his pregnant wife.

Petitioner testified that the original message had said, "I'm going to light you up in civil litigation." Petitioner explained: "It [the message] refers to having the truth come to light, that all [Bruneau's] lies are going to be shined out and truth is going to come clear."

*Count 1: Stalking*

Count 1, the stalking offense, encompassed the acts that were the basis for the offenses alleged in counts 2, 3, and 6. The stalking offense also encompassed other acts of harassment and intimidation committed by petitioner from November 5, 2006 to January 1, 2007.[4] These other acts included petitioner's harassing telephone calls and emails on November 5, 2006, before Bruneau said that she was going to report him to the district attorney. The basis for the offense alleged in count 2 was the threatening voice mails that petitioner had left on Bruneau's cellular telephone on November 5, 2006, in an attempt to dissuade her from reporting him to the district attorney. Furthermore, on December 14, 2006, Bruneau received 16 harassing text messages from petitioner. On December 30, 2006, while Bruneau was at her mother's house in New Orleans, she received from petitioner two voice mails laced with threats and profanities. Petitioner was furious because the State of California was trying to revoke his nursing "license due to your [Bruneau's] mouth." Petitioner declared: "[I]'ll see you by January sixth, my birthday. If it's in New Orleans or if it's in fuckin' Santa Barbara or it's any place you're gonna be. I'll find you. I'm gonna see you . . . . You're just such fuckin' bull you asked for it, you got it, and I'm gonna give it to you, you fuckin' cunt." Petitioner referred to his "niggas" and said, "[W]e're comin' after you all balls, all gas, no fuckin' brakes." Petitioner said that he had met his "niggas" in

---

[4] Count 1 alleges that the stalking occurred "[o]n or between November 5, 2006 and Jan. 1, 2007." In closing argument, the prosecutor told the jury that count 1 "covers everything" during this period.

1    jail.

2                                    **III.**

3                            **PROCEEDINGS**[5]

4           On March 3, 2008, following a jury trial, petitioner was convicted of one

5    count of stalking with a protective order in effect (Cal. Penal Code § 646.9(b))

6    (count one), two counts of attempting to dissuade a witness from reporting a crime

7    (Cal. Penal Code § 136.1(b)) (counts two and three), and one count of violating a

8    protective order by an act involving a threat of violence (Cal. Penal Code

9    § 166(c)(4)) (count six).  Petition at 2; Clerk's Transcript ("CT") at 830-33.[6]  On

10   May 9, 2008, petitioner received a suspended six-year sentence and five years of

11   probation.  *Id.* at 1065.

12          Petitioner appealed his conviction.  Petitioner raised two arguments:  (1) the

13   trial court erroneously determined that venue was proper in the Santa Barbara

14   County Superior Court for counts three and six; and (2) prosecutorial misconduct.

15   Lodgment B.  The California Court of Appeal affirmed the judgment on

16   September 14, 2009 in a reasoned decision.  Lodgment F.

17          Petitioner filed a petition for review in the California Supreme Court

18   presenting the same two arguments raised below.  Lodgment G.  The California

19   Supreme Court summarily denied the petition for review on January 13, 2010.

20   Lodgment H.

21          On April 25, 2011, petitioner filed a habeas petition in the Santa Barbara

22   Superior Court.  Lodgment Z.  Petitioner raised eleven arguments:  (1) a *Crawford*

23   _____

24          [5]   The court thoroughly discussed the lengthy procedural history in its

25   Memorandum Opinion and Order denying the Motion to Dismiss dated June 14,
     2012.  Here, the court will only discuss the proceedings relevant to the instant

26   Petition.

27          [6]   The multi-volume Clerk's Transcript and Reporter's Transcript referenced

28   herein were lodged on July 13, 2012 with the Answer.

                                          7

violation; (2) jury misconduct; (3) prosecutorial misconduct; (4) misleading jury instructions; (5) improper expert witness testimony; (6) one of the two dissuading a witness counts should have been dismissed; (7) sentencing error; (8) trial court erred when it issued protective orders to non-witnesses and victims; (9) he was entitled to credits; (10) the prosecutor implied that the victim did not use profanities or threaten petitioner and improperly injected himself into the trial; and (11) improper venue. *Id.* In a reasoned decision dated June 23, 2011, the Superior Court denied the petition.[7] *Id.*

Petitioner then filed a habeas petition in the Court of Appeal raising only a claim of a *Crawford* violation. Lodgment AA. The Court of Appeal summarily denied the habeas petition on July 12, 2011. Lodgment BB.

Petitioner filed a habeas petition in the California Supreme Court on August 3, 2011, and raised the same arguments presented in the habeas petition filed in the Superior Court. Lodgment CC. The California Supreme Court summarily denied the petition on November 16, 2011. Lodgment DD.

**IV.**

**STANDARD OF REVIEW**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination

---

[7] The Superior Court did not address the issues previously raised and rejected on direct appeal.

1  of the facts in light of the evidence presented in the State court proceeding."  28

2  U.S.C. § 2254(d)(1)-(2) (emphasis added).

3      In assessing whether a state court "unreasonably applied" Supreme Court

4  law or "unreasonably determined" the facts, the federal court looks to the last

5  reasoned state court decision as the basis for the state court's justification.

6  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  With respect to those

7  claims for which there is no reasoned state court decision, the federal habeas court

8  will conduct an "independent review" of the record to determine whether the state

9  court decision was contrary to, or an unreasonable application of, controlling

10  United States Supreme Court precedent.  *See Haney v. Adams*, 641 F.3d 1168,

11  1171 (9th Cir. 2011);  *Allen v. Ornoski*, 435 F.3d 946, 954-55 (9th Cir. 2006).

12      Here, the California Court of Appeal's opinion on September 14, 2009

13  stands as the last reasoned decision on Grounds One and Two.  The Superior

14  Court's opinion on June 23, 2011 stands as the last reasoned decision on Grounds

15  Three, Four, Six, and Seven.  Because no state court issued a reasoned decision on

16  Ground Five, this court will conduct an independent review of the record to

17  determine whether the state court decision was objectively unreasonable.[8]

18                              **V.**

19                          **DISCUSSION**

20  **A.  Respondent Has Not Met Its Burden to Show Procedural Default**

21      Respondent argues that petitioner procedurally defaulted on all of his

22  claims.  Answer at 19-21.

23      A federal court may not review a claim if a state court dismissed the claim

24  on an adequate and independent state law ground.  *Coleman v. Thompson*, 501

25  U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  The opinion of the last

26

27      [8]  Petitioner exhausted Ground Five by raising it in his habeas petition filed in

28  the California Supreme Court.  *See* Lodgment CC at 4.

1  state court rendering a judgment in the case must clearly and expressly state that

2  its judgment rests on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 264

3  n.10, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989). Further, "the application of the

4  state procedural rule must provide 'an adequate and independent state law basis'

5  on which the state court can deny relief." *Park v. California*, 202 F.3d 1146, 1151

6  (9th Cir. 2000) (citing *Coleman*, 501 U.S. at 729-30).

7        Here, respondent merely states the law and alleges that petitioner failed to

8  state any facts demonstrating prejudice or a fundamental miscarriage of justice.

9  But respondent fails to actually identify any adequate and independent state law

10  ground on which the state courts dismissed petitioner's claims. *See Bennett v.*

11  *Mueller*, 322 F.3d 573, 586 (9th Cir. 2003) (state must first plead the existence of

12  an independent and adequate state procedural ground). As such, respondent has

13  not met its burden and failed to adequately plead procedural default. To the extent

14  procedural default may apply to specific claims, the court will address the defense

15  under that specific claim.

16  **B.**   **Petitioner's Claims Generally Implicate Federal Law**

17        Respondent also argues that, "[t]o the extent that Petitioner claims the trial

18  court erred under state statutory law," his claims are not cognizable on federal

19  habeas review because he "failed to show constitutional error." Answer at 21.

20        Federal habeas relief is only available for violations of the federal

21  Constitution, laws, and treaties. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S.

22  62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Petitioners must allege a

23  constitutional violation and cannot "transform a state-law issue into a federal one

24  merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380,

25  1389 (9th Cir. 1996).

26        Here, respondent appears to assert this blanket argument simply for

27  inclusiveness rather than merit. Respondent fails to assert any facts to support its

28

1  argument as to specific claims.  Petitioner's claims generally allege constitutional

2  violations, although some more clearly implicate state law issues.  Whether

3  petitioner's claims are cognizable on federal habeas review will be discussed, as

4  applicable, with respect to specific claims.

5  **C.**     **Petitioner Is Not Entitled to Relief on His Prosecutorial Misconduct**

6          **Claim**

7          In Ground One, petitioner claims that the prosecutor engaged in misconduct.

8  Petition at 5, 5(1)-5(3).[9]  Specifically, petitioner argues the prosecutor misled the

9  jury by asking questions on cross-examination relating to excluded evidence.  *Id.*

10  at 5(1)-(2).  Petitioner further argues that the prosecutor improperly injected

11  himself into the case by asking petitioner whether he believed the prosecution

12  altered evidence or conspired against him.  *Id.* at 5(2).

13          A petitioner's due process rights are violated when prosecutorial

14  misconduct "'so infected the trial with unfairness as to make the resulting

15  conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181,

16  106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416

17  U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)); *Drayden v. White*, 232

18  F.3d 704, 713 (9th Cir. 2000).  To determine whether the misconduct violated due

19  process, a reviewing federal habeas court must consider the misconduct in light of

20  the entire proceedings.  *See, e.g.*, *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir.

21  1991) (examining the prosecutor's remarks in context of the entire trial).  Even if

22  the prosecutor's conduct violates due process, habeas relief will only be granted if

23  the petitioner can establish that the misconduct had a substantial and injurious

24  effect or influence in determining the jury's verdict.  *Shaw v. Terhune*, 380 F.3d

25

26  _____

27      [9]    Petitioner inserted numbered pages behind pages five and six of the
    Petition.  The court will refer to the inserted pages as (page number of form

28  petition) (page number of inserted page).

473, 478 (9th Cir. 2004) (applying harmless error test of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), to prosecutorial misconduct claims).

### 1.   Profanities and Threats

Before trial, the trial court excluded all references to Bruneau's promiscuity, cheating, use of profanity or offense name calling, a "slit you like a pig" voicemail she left for petitioner, and Bruneau's other vulgar or threatening emails.  CT at 662; Reporter's Transcript ("RT") at 35-38.  Petitioner argues the prosecutor committed misconduct by asking petitioner questions implying that Bruneau had never used vulgar language or threatened him, knowing the evidence that she had had been excluded.  Petition at 5(1)-(2).

The record indicates that the trial court chastised both parties on several occasions, including for venturing into this excluded area, but found the prosecution's conduct did not rise to the level of misconduct.  *See, e.g.,* RT at 1222, 1318, 1437.

Petitioner first referenced Bruneau's use of vulgar language on direct examination.  *Id.* at 1050-51, 1161-62.  Petitioner testified that during the January 16, 2004 argument outside of the Cat's Meow at Belle Chasse and in an email communication on another occasion, both he and Bruneau used profanity because that was they way talked to each other.  *Id.* at 1048-51, 1161-62.  Subsequently, on cross-examination, the prosecutor asked petitioner to point out where Bruneau wrote profanities in the emails in Exhibit 26 (emails from the summer of 2006). *Id.* at 1264; *see id.* at 659-62.  The trial court did not allow the prosecution to pursue this line of questioning.  *Id*. at 1264.  The prosecutor then asked petitioner whether his testimony concerning Bruneau's use of profanity during the Belle Chasse incident was false, to which petitioner replied that it was not false and Bruneau used vulgar language on multiple occasions as well as threatened his

safety and life. *Id.* at 1265. The prosecutor then asked petitioner if it was true that, except for the time petitioner threatened Bruneau's child, Bruneau stopped using profanity with petitioner after the Belle Chasse incident, to which petitioner replied it was not true. *Id.* On re-cross examination, petitioner testified that he provided a tape to the police of Bruneau stating that she would slit him like a pig. *Id.* at 1430-31.

Regarding the non-email line of questioning, the Court of Appeal found that the prosecutor had not engaged in misconduct because he did not imply that Bruneau *never* used profanities in her communications with petitioner. Lodgment F at 8-9. Instead, the Court of Appeal determined that the prosecutor implied that after the Belle Chasse incident, Bruneau only used profanity on one occasion and that was in response to a threat to her child. *Id*. The Court of Appeal further found that Bruneau's testimony in the first trial gave the prosecution a reasonable basis to believe this implied fact.[10] *Id.* at 8. This was a reasonable determination of the facts. And even if the prosecutor had unreasonably implied that Bruneau stopped her use of profanity toward petitioner, the questions likely did not influence the jury's verdict since petitioner testified that Bruneau did not stop.

The Court of Appeal's finding concerning the emails, however, was flawed. The Court of Appeal found that there was no misconduct because exhibit 26, which was not admitted into evidence, consisted of all emails between petitioner and Bruneau from the summer of 2006, well after the Belle Chasse incident. *Id*. at 9. But the prosecutor asked petitioner about the emails prior to his question implying that Bruneau stopped using profanities after the Belle Chasse incident, and thus the question could be interpreted more broadly. *See* RT at 1264-65.

---

[10]  "At the first trial, Bruneau testified: 'As things unfolded, as I got beat up in January [2004 in Belle Chasse], as I became more afraid of [petitioner] and knew his potential, I kept my behavior in check . . . I didn't want to inflame or aggravate him because I was afraid of him.'" Lodgment F at 8-9.

13

Nevertheless, even if the prosecutor's question concerning the emails implied that Bruneau *never* used profanity, the trial court promptly ordered the prosecutor not to pursue that line of questioning. *Id.* at 1264. There is no reason to think that this question, which the trial court did not allow, had a substantial and injurious effect or influence on the jury's verdict.

## 2.     The Prosecutor's Injection of Himself Into the Case

Petitioner also complains that the prosecutor engaged in misconduct by improperly injecting himself into the case. Petition at 5(2)-5(3). Specifically, petitioner argues that the prosecutor improperly asked him if he believed that the prosecution altered text messages and fabricated the case. *Id.*; *see* RT at 1327-38.

In its Answer, respondent argues that because petitioner's counsel failed to raise a contemporaneous objection of prosecutorial misconduct, he waived the issue. Answer at 24; *see* RT at 1327-28 (objecting only on grounds of relevance). The Court of Appeal agreed with this argument, finding this claim of prosecutorial misconduct forfeited and not reviewable on appeal under state law because petitioner failed to timely object on this ground and request an admonition to the jury to disregard the impropriety. Lodgment F at 10-11; *see* Cal. Evid. Code § 353; *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

As discussed above with respect to the general procedural default argument asserted by respondent, this court may not entertain claims that were dismissed by a reviewing state court on an independent state law ground. *See Coleman*, 501 U.S. at 729 (a federal court "has no power to review a state law determination that is sufficient to support the judgment"). That is the case here. There is some question, however, whether respondent has met its burden to plead the existence of an independent and adequate state procedural bar, as respondent has argued for procedural default only generally, and with respect to this claim has simply reasserted its position that petitioner waived any prosecutorial misconduct

1 objection without actually pointing to the Court of Appeal's denial of this claim on
2 an independent state law ground. *See Bennett*, 322 F.3d at 585-86. If respondent
3 has not met its burden, then the burden may not have shifted to petitioner to
4 demonstrate the inadequacy of the state rule or to show cause for the default and
5 actual prejudice resulting it. *See Gray v. Netherland*, 518 U.S. 152, 162, 116 S.
6 Ct. 2074, 135 L. Ed. 2d 457 (1996); *Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th
7 Cir. 2004) (citing *Bennett*, 322 F.3d at 586). Indeed, it is not clear that petitioner
8 was adequately put on notice of his need to make such a showing.

9 In any event, fundamentally this is an evidentiary issue under state law that
10 is not cognizable on federal habeas review. As noted, "'federal habeas corpus
11 relief does not lie for errors of state law.'" *Estelle*, 502 U.S. at 67 (citation
12 omitted). Habeas relief may be available due to the admission of prejudicial
13 evidence if the admission was fundamentally unfair and resulted in a denial of due
14 process. *Id*. at 72. To warrant federal habeas relief, the admission of the evidence
15 must have "so fatally infected the proceedings as to render them fundamentally
16 unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (citation
17 omitted).

18 Here, petitioner testified on direct exam that a text message in evidence had
19 been altered. RT at 1164. The prosecutor asked petitioner about this on cross
20 examination, and petitioner testified to his belief that Bruneau had altered text
21 messages. RT at 1327. The prosecutor then asked petitioner if he believed the
22 prosecutor had altered text messages, and when petitioner denied such a belief, the
23 prosecutor asked petitioner whether he believed the trial prosecutor and another
24 prosecutor had conspired and fabricated this case against him, to which petitioner
25 responded that he did. RT at 1327-28. Petitioner's trial counsel made a number of
26 relevance objections, which the trial court overruled. *Id.* The questions about the
27 altering of the text messages followed appropriately from petitioner's own
28

1   testimony on direct exam.  And even if the trial court erred in overruling the

2   relevance objections to the prosecutor's questions about whether petitioner

3   believed prosecutors conspired and fabricated the case, petitioner has made no

4   showing that this error rose to the level of a due process violation.

5          Petitioner argues this line of questioning "made petitioner seem like a

6   crazed conspiracy theorist who would unjustly accuse two ethical public servants

7   of manufacturing and fabricating evidence."  Petition at 5(2).  Even if this is

8   correct, in light of the extensive other evidence of petitioner's communications

9   and conduct toward Bruneau, this evidence could not have rendered the

10  proceedings fundamentally unfair.  For the same reason, the prosecutor's conduct

11  did not violate due process so as to warrant habeas relief.  In addition, petitioner

12  has not shown prejudice, as he has not shown the alleged misconduct had a

13  substantial effect on the jury's verdict in light of the other evidence against him.

14         Accordingly, petitioner is not entitled to relief on his prosecutorial

15  misconduct claims because the Court of Appeal's denial of petitioner's

16  prosecutorial misconduct claims was neither contrary to clearly established federal

17  law nor an unreasonable determination of the facts.

18  **D.    Petitioner Is Not Entitled to Relief on His Improper Venue Claim**

19         In Ground Two, petitioner argues that he was tried in the improper venue

20  for counts three and six.  Petition at 5, 5(3).  Specifically, petitioner argues that the

21  Santa Barbara County Superior Court was an improper venue for those counts

22  because he was not in Santa Barbara County when those alleged crimes occurred.

23  *Id.*

24         The Court of Appeal held that venue was proper under California Penal

25  Code § 781.  Lodgment F at 6-7.  Section 781 provides that when an offense "is

26  committed in part in one jurisdictional territory and in part in another

27  jurisdictional territory, or the acts or effects . . . occur in two or more jurisdictional

28

1 territories, the jurisdiction of such offense is any competent court within either
2 jurisdictional territory."  Section 781 is construed liberally and in a commonsense
3 manner.  *People v. Betts*, 34 Cal. 4th 1039, 1057, 23 Cal. Rptr. 3d 138, 103 P.3d
4 883 (2005).  Thus, venue is proper even in counties where the "acts leading to
5 commission of the crime occur."  *People v. Gutierrez*, 28 Cal. 4th 1083, 1118, 124
6 Cal. Rptr. 2d 373, 52 P.3d 572 (2002) (internal quotation marks and citation
7 omitted).

8        On November 5, 2006, petitioner harassed Bruneau by phone and email
9 while she was in Santa Barbara County.  RT at 304-21.  In response, Bruneau
10 emailed petitioner informing him that she was reporting him to the district
11 attorney.  *Id.* at 315, 318.  In reply to the email, petitioner left the threatening
12 emails, voicemails, and text messages that formed the basis of counts three and
13 six.  *See id.* at 322-26; *see also id.* at 315-21.  The Court of Appeal found that
14 venue was therefore proper because the acts leading to the commission of the
15 crimes occurred in Santa Barbara County.

16        "The vicinage clause of the Sixth Amendment guarantees an accused "'the
17 right to a . . . jury of the . . . district wherein the crime shall have been committed,
18 which district shall have been previously ascertained by law."  *Stevenson v. Lewis*,
19 384 F.3d 1069, 1071 (9th Cir. 2004) (quoting U.S. Const. amend VI).  The
20 Supreme Court, however, has not decided whether the vicinage clause applies to
21 the states through the Fourteenth Amendment.  *Id.*; *see also Price v. Super. Ct.*, 25
22 Cal. 4th 1046, 1069, 108, Cal. Rptr. 2d 409, 25 P.2d 618 (2001) (holding that the
23 vicinage clause is not applicable to a state criminal trial).  Thus, the Court of
24 Appeal's decision cannot be contrary to or an unreasonable application of clearly
25 established federal law.  *See Wright v. Van Patten*, 552 U.S. 120, 125-26, 128 S.
26 Ct. 743, 169 L. Ed. 2d 583 (2008) (a state court's decision on an issue cannot be
27 contrary to or an unreasonable application of federal law when there is no clearly

1  established federal law directly addressing that issue); *see also Alldredge v.*
2  *Harrington*, 2011 WL 3047624, at *16 (N.D. Cal. Jul. 25, 2011); *Olagues v.*
3  *Brown*, 2010 WL 3749422, at *6 (N.D. Cal. Sept. 23, 2010).

4  Because there is no clearly established federal law that the vicinage clause
5  applies to the states, petitioner is not entitled to habeas relief on his improper
6  venue claim.

7  **E.   Petitioner Is Not Entitled to Relief on His *Crawford* Claim Pertaining to**
8  **Documents from His License Revocation Proceedings**

9  Petitioner argues in Ground Three that the trial court erred in admitting
10  hearsay documents into evidence.  Petition at 5-6, 6(1).  Specifically, petitioner
11  contends that the documents from his nursing license revocation proceedings were
12  inadmissible hearsay and petitioner should have had the right to cross-examine the
13  drafters of the documents.  *Id.* at 6(1).

14  "The Confrontation Clause of the Sixth Amendment guarantees the right of
15  an accused in a criminal prosecution 'to be confronted with the witnesses against
16  him.'"  *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d
17  674 (1986).  The purpose of the confrontation right is to provide a defendant the
18  opportunity of cross-examination.  *Id.*  But such right is not unlimited.  The
19  Confrontation Clause does not guarantee a "cross-examination that is effective in
20  whatever way, and to whatever extent, the defense might wish."  *Delaware v.*
21  *Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).  The
22  opportunity to cross-examine a witness does not require that the cross-examination
23  be at trial.  A prior opportunity for cross examination, such as at a preliminary
24  hearing, is sufficient when a witness is unavailable at trial.  *Crawford v.*
25  *Washington*, 541 U.S. 36, 57, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Smith v.*
26  *Harrison*, 378 Fed. Appx. 767, 768 (9th Cir. 2010).

27  Documents are functionally equivalent to a testimonial statement if "made

28

18

1   under circumstances which would lead an objective witness reasonably to believe

2   that the statement would be available for use at a later trial." *Crawford* at 51-52,

3   68 (internal quotation marks and citation omitted).  These include extrajudicial

4   statements such as affidavits and depositions.  *Id.* at 51-52.  "Testimonial

5   statements of witnesses absent from trial have been admitted only where the

6   declarant is unavailable, and only where the defendant has had a prior opportunity

7   to cross-examine."  *Id.* at 59.  The Confrontation Clause, however, "does not bar

8   the use of testimonial statements for purposes other than establishing the truth of

9   the matter asserted."  *Id.* at 59 n.9.

10      Here, the admission of documents from petitioner's license revocation

11  proceedings did not violate the Confrontation Clause.  First, the documents were

12  not testimonial because they were not created for use in a later prosecution.

13  Rather, the documents were administrative records created in the course of two

14  nursing license revocation hearings.  *See* RT at 1358.  The drafters of the

15  documents had no reason to believe that the documents would later be used in a

16  criminal trial.  Second, even if testimonial, the statements were not offered for the

17  truth of the matter stated.  As the trial court correctly found, the records of the

18  nursing boards were impeaching documents.  *See id*.; *U.S. v. Olsen*, 704 F.3d

19  1172, 1184 (9th Cir. 2013) (documents that are otherwise inadmissible as hearsay

20  may be used to impeach a witness).  The documents impeached petitioner on an

21  issue he placed before the jury – whether Bruneau was solely responsible for the

22  revocation of his licenses.  RT at 1260-63, 1358, 1409-10.  Thus, the documents

23  were not testimonial and were not subject to the Confrontation Clause, nor were

24  they inadmissible hearsay.

25      Accordingly, the Superior Court's denial of petitioner's *Crawford* claim was

26  neither contrary to clearly established federal law nor an unreasonable

27  determination of the facts.  Petitioner is not entitled to relief on Ground Three.

28

**F.      Petitioner Is Not Entitled to Relief on His Juror Misconduct Claim**

In Ground Four, petitioner complains that his constitutional rights were violated by multiple instances of juror misconduct.  Petition at 6, 6(1)-(2). Specifically, petitioner contends that:  (1) the trial court erred when it denied his counsel's request to dismiss a potential juror for cause; (2) a juror lied during voir dire, and (3) three jurors continuously fell asleep during trial.  *Id.*

The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of impartial, 'indifferent' jurors."  *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).  "If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel."  *U.S. v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1977).

The trial court is entitled to the presumption of correctness with regard to its determination of juror bias.  *See Wainwright v. Witt*, 469 U.S. 412, 428-29, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985) (noting that the basis of credibility findings "cannot be easily discerned from an appellate record"); *U.S. v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) ("Because determinations of impartiality may be based in large part upon demeanor, this court typically accords deference to the district court's determinations, and reviews a court's findings regarding actual juror misconduct 'for manifest error' or abuse of discretion.").  As such, a petitioner must produce clear and convincing evidence of a juror's bias.  *See Leon v. Yates*, 378 Fed. Appx. 755, 757 (9th Cir. 2010).

As the Superior Court determined, plaintiff fails to state sufficient facts to support his allegations.  *See* Lodgment Z at 5.

**1.      Rape and Domestic Violence Counselor**

First, with regard to the potential juror, petitioner has failed to provide any facts to establish that a potential juror was a rape and domestic violence counselor,

20

that the potential juror was biased, or that the potential juror was impaneled.  Even assuming petitioner correctly alleged that one of the potential jurors was a rape and domestic violence counselor, this does not establish the juror was biased.

The Petition implies that petitioner's counsel used a peremptory challenge to dismiss the potential juror after the trial court refused to allow counsel to dismiss the potential juror for cause.  The Supreme Court has "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Ross v. Okla.*, 487 U.S. 81, 88, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988).  So long as the impaneled jury is not biased, "the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated." *Id.*  Petitioner does not argue that his loss of a peremptory challenge resulted in a biased jury.

### 2. **Untruthful Juror**

Second, petitioner fails to allege any facts that would demonstrate that  the juror who was allegedly untruthful was biased.  Petitioner alleges that, during voir dire, a juror failed to inform the court that he knew or was related to someone who had been prosecuted, arrested, convicted, etc.  Petition at 6-1.  Petitioner alleges that he was incarcerated with the juror's nephew while awaiting sentencing. *Id.* But petitioner's allegations are insufficient.  Petitioner fails to identify the juror, any facts that show that the nephew was in jail prior to or during voir dire, or that the juror was biased.

Notwithstanding the lack of specificity, petitioner referenced a hearing.  Assuming that the reference is sufficient, the court was able to ascertain from the record that petitioner's complaint refers to Juror No. 9.  Between petitioner's conviction and sentencing, petitioner's counsel raised a claim of misconduct.  The court held a hearing during which Juror No. 9 testified that he had a great-nephew, Anthony Flippin, who had been in and out of jail.  RT at 1917-18, 1920.  Juror No.

9 testified that, during voir dire, he inadvertently failed to state that he had a relative who had contact with the court system and had been arrested, charged, or convicted because he had little contact with Flippin and did not "often think of him as being a family member." *Id.* at 1917, 1920-21. Juror No. 9 explained that after the jury reached a verdict, Flippin was arrested and released. *Id.* at 1917-18. Flippin's mother, the niece of Juror No. 9, asked him to pick up Flippin and house him for the night. *Id.* at 1918. On that night, Juror No. 9 asked Flippin if he knew petitioner, to which Flippin replied that he did. *Id.* at 1918, 1922-23. Juror No. 9 further testified that he did not speak to anyone, including his niece or wife, about the trial until after it concluded. *Id.* at 1922. The trial court found that Juror No. 9 did not engage in misconduct. *Id.* at 1924.

The Superior Court reasonably found that petitioner did not allege any facts showing misconduct or bias. Petitioner did not provide any evidence, much less clear and convincing evidence, to overcome the trial court's presumption of correctness.

### 3.   Sleeping Jurors

Petitioner also complains although the trial court was aware that three jurors continuously fell asleep during trial, it failed to act. Petition at 6(2).

The Sixth Amendment right to fair and impartial jury means jurors who are "capable and willing to decide a case solely on the evidence before it." *U.S. v. Olano*, 507 U.S. 725, 738, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (internal quotation marks and citation omitted). A juror who falls asleep during trial is not per se incompetent. *See Tanner v. U.S.*, 483 U.S. 107, 126-27, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987); *U.S. v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987). A sleeping juror only rises to the level of a constitutional violation requiring a new trial when the sleeping juror missed essential portions of the trial and thus was unable to fairly consider the evidence. *U.S. v. Barrett*, 703 F.2d 1076, 1083 n.13

1   (9th Cir. 1983).

2       Here, petitioner fails to identify either the jurors who were sleeping during

3   trial or the portions of the trial in which they slept.  Petitioner alleges that his

4   counsel raised the issue with the trial court on multiple occasions, but the record is

5   bereft of any mention of sleeping jurors.[11]  Thus, there is no evidence that any

6   juror slept during any part of the trial, much less during the essential portions.

7       In short, petitioner is not entitled to relief on his juror misconduct claims.

8   The Superior Court's denial of these claims was not an unreasonable

9   determination of the facts or contrary to clearly established federal law.

10  **G.   Petitioner Is Not Entitled to Relief on His Claim That Denial of His**

11  **Request to Recall a Witness Violated the Confrontation Clause**

12      In Ground Five, petitioner argues that the trial court violated his right to

13  recall Bruneau.  Petition 6, 6(2).  Specifically, petitioner argues that because the

14  prosecution engaged in misconduct by referring to excluded evidence in order to

15  mislead the jury into believing that such evidence did not exist, he had the right to

16  re-call Bruneau to question her about the evidence.[12]  *Id.*

17      The right to confront a witness is not unlimited.  The trial court retains

18  "wide latitude" "to impose reasonable limits on . . . cross-examination based on

19  concerns about, among other things, harassment, prejudice, confusion of the

20  issues, the witness' safety, or interrogation that is repetitive or only marginally

21  relevant."  *Van Arsdall,* 475 U.S. at 679.

22      Petitioner argues that the trial court incorrectly denied his counsel's request

23  _____

24  [11]   At the beginning of the trial, the trial court informed the prosecutor and

25  defense counsel that although his eyelids were drooping, Juror No. 3 was not
    sleeping.  RT at 421.  Instead, Juror No. 3 required eyelid surgery.  *Id.*

26

27  [12]   Petitioner also states that the trial court denied his request to call the
    prosecutor as a witness but does not specifically assert the denial as a basis for

28  Ground Five.  Petition at 6(2).

1  to recall Bruneau in order to question her about her use of profanities, which the

2  prosecutor had brought up during petitioner's cross-examination in violation of

3  the trial court's order excluding such references. *See* RT at 1435. As discussed

4  above with respect to Ground One, the prosecutor did not engage in misconduct.

5  Because the prosecutor did not engage in misconduct, the foundation of

6  petitioner's argument fails. Further, petitioner's counsel cross-examined Bruneau

7  over three days. The trial court had the discretion to deny petitioner's request to

8  recall Bruneau on several grounds, including concerns about repetition of issues.

9      Accordingly, petitioner is not entitled to relief on Ground Five because the

10  state court decision was not contrary to clearly established federal law or an

11  unreasonable determination of the facts.

12  **H.    Petitioner Is Not Entitled to Relief on His Jury Instruction Claim**[13]

13      In Ground Six, petitioner claims his due process rights were violated by the

14  jury instructions given for count six. Petition at 6, 6(2). Petitioner asserts that the

15  instruction given was impermissibly vague, as it failed to state the charged date of

16  the alleged act in question. Petition at 6(2). Petitioner also argues that counts five

17  and six were intertwined, and since petitioner was not convicted on count five, he

18  should not have been convicted on count six. *Id.*

19      Normally, challenges to jury instructions are not entitled to federal habeas

20  relief because they concern state law. *Estelle*, 502 U.S. at 71-72; *Van Pilon v.*

21  *Reed*, 799 F.2d 1332, 1342 (9th Cir. 1986) ("Claims that merely challenge the

22  correctness of jury instructions under state law cannot reasonably be construed to

23

24  _____

    [13]  Grounds Six and Seven are somewhat unclearly presented in the Petition, as
25  petitioner lists them in the space calling for petitioner to identify any unexhausted
    claims. *See* Petition at 6. Perhaps for this reason, respondent did not specifically
26  address these claims in its Answer. It is clear to the court, however, that petitioner
    intended to raise these as his sixth and seventh grounds for relief, and the court
27  accordingly considers them.

28

1  allege a deprivation of federal rights."). A challenge to a jury instruction based on

2  a state law violation may be entitled to federal habeas relief only when the

3  instruction implicates fundamental fairness. *Estelle*, 502 U.S. at 72. "'[T]he ailing

4  instruction by itself [must have] so infected the entire trial that the resulting

5  conviction violates due process.'" *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141,

6  147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)).

7      Petitioner is correct that the instructions given to the jury regarding the

8  elements of count six did not state the date on which the alleged violation of the

9  court order occurred (*see* RT at 1638), but that did not render the instructions

10  vague. Further, the verdict form for count six states the jury found petitioner

11  guilty of violating a court order "on or about January 1, 2007" (CT at 833),

12  leaving no doubt as to its finding. There was no error in not including the date the

13  alleged violation occurred within the actual jury instructions, and certainly not one

14  rising to the level of a due process violation.

15      Petitioner is also correct that counts five and six are intertwined, at least to

16  the extent that both are based on a text message petitioner sent Bruneau on

17  January 1, 2007 stating "I'm going to light you up." *See* CT at 16; RT at 345,

18  1690, 1703. But they charge different crimes. Count five charges petitioner with

19  making a criminal threat in violation of California Penal Code § 422; count six

20  charges petitioner with contempt of court for violating a court protective order in

21  violation of California Penal Code § 166(c)(4). CT at 16. To find petitioner guilty

22  of making a criminal threat, the jury would have had to find, inter alia: petitioner

23  willfully threatened to unlawfully kill or cause great bodily injury to Bruneau; the

24  threat communicated to Bruneau a serious intention and the immediate prospect it

25  would be carried out; the threat caused Bruneau to be in sustained fear for her own

26  safety; and Bruneau's fear was reasonable. *See* RT at 1635-36; CALCRIM 1300.

27  As the trial court instructed the jury, none of these are elements of the crime of

28

1   violating a court order as charged in count six. *See* RT at 1638-39. The trial

2   court's instructions on count six were legally accurate. *See* CALCRIM 2701. As

3   the Superior Court found, the text message petitioner sent on January 1, 2007

4   could constitute a violation of a protective order without also meeting all of the

5   elements required for it to constitute a criminal threat. *See* Lodgment Z at 7.

6   Thus, there is no inconsistency in the jury's verdicts on counts five and six.

7   Moreover, even if the verdicts were inconsistent, "[t]he Supreme Court has

8   made it clear that inconsistent verdicts may stand when one of those verdicts is a

9   conviction and the other an acquittal." *Ferrizz v. Giurbino*, 432 F.3d 990, 992

10  (9th Cir. 2005) (citing *U.S. v. Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 83 L. Ed.

11  2d 461 (1984); *Dunn v. U.S.*, 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356

12  (1932)). Thus, the Superior Court's rejection of this claim could not be contrary to

13  clearly established federal law.

14  Accordingly, petitioner is not entitled to habeas relief on Ground Six.

15  **I.     Petitioner Is Not Entitled to Relief on His Expert Testimony Claim**

16  Petitioner argues in Ground Seven that his due process rights were violated

17  when, over his objection, the trial court allowed the prosecution to introduce

18  expert testimony from a domestic violence counselor concerning battered

19  women's syndrome. Petition at 6, 6(3). Petitioner argues this testimony was

20  irrelevant to this case, and the testimony misled the jury into believing there was

21  actual violence in petitioner's relationship with Bruneau. *Id.* at 6(3).

22  As discussed above, generally the admission of evidence is a matter of state

23  law and therefore not cognizable on federal habeas review, as "it is not the

24  province of a federal habeas court to reexamine state-court determinations on

25  state-law questions." *Estelle*, 502 U.S. at 67-68. To be eligible for federal habeas

26  relief, petitioner must show that the admission of evidence rendered the trial so

27  fundamentally unfair that it violated federal due process. *Id.* "Only if there are *no*

28

permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal*, 926 F.2d at 920.

At trial, Rebecca Robertson testified regarding "intimate partner abuse," over petitioner's counsel's objections that her testimony be limited to "intimate partner battering" consistent with California Evidence Code § 1107. *See, e.g.*, RT at 819, 822. The term "intimate partner battering" has replaced was used to be referred to as "battered women's syndrome." Cal. Evid. code § 1107(f). Robertson testified that intimate partner violence syndrome refers to the impact on a person who has lived for a long time with someone who is emotionally, verbally, or physically abusive. RT at 824. She testified at length regarding the syndrome and its effects. *Id.* at 824-31, 845-52. Among other things, she testified that domestic violence is not limited to physical violence, and that long-term verbal and emotional abuse does more to erode a victim's self-esteem than physical abuse. *Id.* at 845-46. Petitioner's counsel objected that Robertson's testimony was misleading because she failed to acknowledge there must be battering in the relationship for the syndrome to exist. *Id.* at 837. The court overruled the objections and allowed Robertson's testimony. *See, e.g., id.* at 839.

To the extent petitioner is contending Robertson's testimony was improper because she testified intimate partner battering includes emotional and verbal abuse, that contention fails under § 1107, which explicitly permits expert testimony "regarding intimate partner battering and its effect, including the nature and effect of physical, emotional, or mental abuse." Cal. Evid. Code § 1107(a). What petitioner is more clearly asserting, however, is that Robertson's testimony misled the jury into believing there was actual physical violence in his relationship with Bruneau. Petition at 6(3). But this assertion is not supported by the record, as Robertson testified at length regarding emotional and verbal abuse, and made clear her testimony was based on domestic abuse generally rather than the facts of

the instant case. RT at 845-46, 852-53. Moreover, any argument either that the jury was misled into believing there was physical violence when there was none, or that the expert testimony should not have been permitted in the absence of evidence of physical violence, fails because there was in fact evidence of physical violence. Specifically, Bruneau testified that petitioner physically assaulted her in January 2014, and threw a phone book and beer can at her in November 2014. *Id.* at 275-77, 282.

Bruneau testified to a series of events in which petitioner assaulted her, they separated and later get back together, and then the cycle repeated. *See id.* at 275-84. Robertson's testimony regarding why domestic abuse victims stay in or return to relationships with their abusers was relevant to explain Bruneau's behavior, which was relevant to her credibility as a witness. *See id.* at 848-52. As there was a permissible inference the jury could draw from the expert testimony, its admission did not violate due process.

Accordingly, the Superior Court's rejection of this claim was neither contrary to clearly established federal law nor an unreasonable determination of the facts. Petitioner is therefore not entitled to habeas relief on Ground Seven.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered denying the Petition and dismissing this action with prejudice.

DATED: March 31, 2015

SHERI PYM
United States Magistrate Judge

28